**Bernard BEYDA and Robert Beyda, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 18363.**

United States Court of Appeals Ninth Circuit.

Nov. 15, 1963.

Rehearing Denied Dec. 24, 1963.

Leo R. Friedman, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., and Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before BARNES and MERRILL, Circuit Judges, and TAVARES, District Judge.

TAVARES, District Judge.

This is an appeal from a sentence and judgment upon conviction of violation of Title 18, U.S. Code, Section 659, possession of stolen property from a foreign shipment. Jurisdiction is invoked under Title 28, U.S.C., Sections 1291, 1294.

Twin brothers, Robert and Bernard Beyda, were charged in an indictment in two counts with possession of stolen property from foreign shipments. Count 1 concerned the purchase, on or about September 20, 1960, in San Francisco, of approximately 50 Hartman transistor radios which had been part of a shipment from Osaka, Japan, to Chicago, Illinois. Count 2 concerned the purchase, on or about July 20, 1961, in San Francisco, of approximately 100 Channel Master transistor radios shipped from Kobe, Japan, to San Francisco, California. Defendants at all stages were represented by retained counsel.

After a trial, jury waived, the District Court, on September 7, 1962, found both defendants guilty on both counts. A Motion for a New Trial in behalf of both defendants was filed within five days, on September 12th.[1]

On October 19, 1962, there were filed in behalf of defendants, affidavits of defendant Bernard Beyda, and three others, seeking a new trial on the basis of allegedly newly discovered evidence. Although the record does not expressly state that the trial court ever ruled on the Motion for a New Trial, it is admitted by all parties in their briefs, that the Motion was denied on October 30, 1962.[2]

On October 30th each defendant was sentenced to two years in the custody of the Attorney General on each count of the indictment, the sentence on Count 1 to run concurrently with that on Count 2.

Bernard and Robert Beyda operated between 1960 and 1962 two discount stores,[3] in the nine and ten hundred blocks of Market Street, San Francisco, California. The stores specialized in the sale at retail of all kinds of merchandise at discount prices.

The lower Court having found, jury waived, that the defendants were guilty, it is incumbent upon this Court to view the evidence and the inferences that may justifiably be drawn therefrom in the light most favorable to the government. [U. S. v. Strickland, D.C., 205 F. Supp. 299; United States v. Berkley (C.A. 6) 288 F.2d 713.]

1. The Motion, in its material part, reads as follows:
"The Defendants move the Court for a new trial in the interest of justice on the grounds of errors in law and the advisory and rejective of evidence, and that the verdict is not supported by substantial evidence, and that the verdict is contrary to the weight of the evidence." (Evidently defendants' counsel failed to proofread the Motion before filing it, or he would have noticed the misspelling of "admission and rejection.")

2. The defendants' opening brief, p. 2, states: "Motion for new trial was made September 12, 1962 * * * and on Oc-

tober 30, 1962, the Court denied the defendants' motions for new trial and for probation, and rendered judgment * * *." The government's brief, Note 1, page 2, states that the file jacket of the United States Attorney's Office notes "Motion for a new Trial denied October 30, 1962."

3. It appears that, at the time of the Hartman radio transaction (Sept. 1960) Robert was a part-time employee of his brother who then owned the 900-block store, but that at the time of the Channel Master radio transaction (July, 1961) Robert was in partnership with Bernard in the business of both stores.

Four errors are alleged on appeal:

■ The first alleged error is the refusal of the Court to admit into evidence testimony concerning a pair of binoculars, which testimony was stated to be offered to prove that the "suggested retail price means nothing." The defendants called one Joe E. Ellen as witness in an attempt to show that the suggested retail price of goods announced by a manufacturer is no indication of the proper or true retail price or value. Ellen operated a discount store on Market Street, San Francisco. However, we agree with the government (1) that an insufficient foundation was laid to indicate the competency, relevancy, and materiality of this evidence to suggested retail prices for the particular types of merchandise—radios—involved in this case, and (2) that no sufficient offer of proof was made by defendants. Moreover, upon the Court's stating in effect that it understood that in businesses of this type (discount houses) it was an elementary proposition that there was arms-length bargaining between the parties to get the best possible price, and that this was a matter of common acceptance, the proposed exhibit was withdrawn. On this record we can find no error in the Court's ruling rejecting the proffered testimony and insisting on confining the testimony to radios. We further find that the point was waived by voluntary withdrawal of the exhibit and witness by defense counsel.

■ The second alleged error was that there was insufficient evidence to support the verdict of the District Court that defendant Robert Beyda was in possession of the stolen property because it is claimed he had no ownership interest in the radios or in the store for which Bernard Beyda purchased the radios at the time of the purchase of the Hartman radios, which were the subject of Count 1 of the indictment, it being claimed that defendant Robert did not in any manner aid or abet Bernard in such purchases.

From our examination of the record it appears that the evidence as to Count 1 is not as strong against Robert Beyda as it is against both defendants with respect to Count 2, which was ample to sustain the conviction as to Count 2. This being the case, and since the sentences pronounced by the Court on both counts were to run concurrently, it would seem unnecessary to consider further any objections as to Count 1.[4] However, we will nevertheless discuss such objections

Both Beydas testified that at the time of the Hartman transaction covered by Count 1, Robert was only an employee of Bernard. Hence it is claimed that possession by Robert was not proved. While it might be argued that there are circumstances, such as the close family and business relationship between these twin brothers, the admitted consultation of Bernard with Robert concerning this proposed purchase before Bernard closed the deal, Robert's expressed favorable opinion as to the deal's being a good one (Hartsin stated that Robert said, "We can't go wrong on that price."), the admitted partnership arrangement between both the brothers very shortly thereafter, covering this and another store in the next block, and other circumstances which could have justified an inference by the trial judge that Robert had more than a pure employee relationship to the business, we assume for the purpose of this phase of the case that such evidence was insufficient to prove such possession by Robert.

One result of this assumption is that such evidence would not be sufficient to justify invocation of the presumption of guilty knowledge of the stolen character of the goods from the mere possession of the recently stolen Hartman radios, a presumption, however, that fully applied to Bernard. However, insofar as such guilty knowledge is concerned, there was sufficient evidence from the testimony of Hartsin, the admitted presence and consultation of the Beyda brothers during

4. Lawn v. United States (1958), 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321; Hirabayashi v. United States (1943), 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774.

the Hartman negotiations, and the surrounding circumstances, to support a finding by the Court, independently of such presumption, that Robert had such guilty knowledge. Among other things, Hartsin testified to the effect that he told both defendants that the Hartman radios were "warm," that if they would take care of Hartsin, he would take care of them, that they said he didn't have anything to worry about, and that he told them to be careful.

As to the necessity of proving the receipt or possession of the stolen goods, we believe that the evidence, including that above mentioned, was sufficient to justify a finding by the lower Court that, even if Robert was a mere employee, he aided and abetted his brother Bernard in the transaction, knowing that it was illegal, thereby making him a principal under 18 U.S.C. § 2(a). Moreover, the conflict between the testimony of the Beydas, on the one hand, and that of the government witnesses—even excluding that of Hartsin—coupled with the other evidence, was sufficiently great and material to aid in the inference of guilt, if the Court, as it evidently did, believed that the Beydas' testimony was false.

█ The third alleged error claims that there was insufficient evidence (as to both counts) to support the District Court's finding of guilty, in that allegedly the evidence did not warrant a finding that the defendants Bernard or Robert, or either of them, had knowledge of the stolen nature of the transistor radios under either count. What we have said previously concerning Robert as to Count 1, sufficiently disposes of the objection as to Bernard with respect to the same count, since Bernard did most or all of the talking with Hartsin in the Hartman transaction.

However, we again point out that even if the evidence was insufficient as to Count 1 with respect to Bernard, the concurrent nature of the sentences would make this immaterial if the evidence as to Count 2 was sufficient.

█ Count 2 relates to the Channel Master radios. The evidence is uncontradicted that, at the time of this transaction, Robert and Bernard were partners in the business which purchased these Channel Masters. Although the Beydas in court testified to the contrary, the government produced ample evidence through Hartsin, and two F.B.I. witnesses, to prove both possession and guilty knowledge on the part of both Beydas as to the Channel Masters. Hartsin testified that both brothers were present at the Channel Master transaction, although Bernard did most or all of the talking; that he told both brothers that the Channel Master radios were "hot;" that they had better be careful how they displayed them or got rid of them; and that he told them to get rid of the paper around the radios and cartons so that there would be no evidence.

There was also evidence from other apparently credible witnesses, or from admissions of Bernard, to the following effect:

(1) That these radios were of a franchise type sold only by certain specific wholesalers (admitted by Bernard, although he says he was told that the ones he purchased were a "close-out");

(2) That they were purchased at $8.00 each, which Bernard told F.B.I. agent Rauch made them an excellent buy;

(3) That at this time the radios were being sold to consumers for around $44.-00 each, to distributors from factory at around $23.00, and to the middleman for around $29.00;

(4) That Bernard told F.B.I. agent Rauch that all of the radios had been sold by the Beydas' store in the normal course of business, until informed by the agent that some had been seen in Don's Jewelry across the street; whereupon Bernard admitted to the agent that they had sold a dozen to Don's Jewelry for $14.00 each;

(5) That Bernard, nevertheless, told Rauch that he had sold all the rest of the radios through the Beydas' store in the retail trade; whereas, according to Saf-

die (a rebuttal witness who also operated a discount store across the street from the defendants') the Beydas had sold some 14 to 16 such radios to Safdie, also for $14.00 each;

(6) That Don's Jewelry had listed such radios at $29.95, but sold them between $20.00 and $30.00, at which price they were good sellers;

(7) That Safdie had resold such radios for between $29.95 to $32.50, which he said was the normal selling price.

In this connection the lower court could well have considered as an additional suspicious circumstance bearing on the question of guilty knowledge, the fact that the very substantial number of radios so purchased at $8.00 each, were immediately resold to other dealers at a mark-up of only $6.00 over the $8.00 purchase price, which mark-up was far below the normal retail price (when the goods could have been sold at retail for at least between $20.00 to $30.00 each), and instead of being sold in the usual manner of a discount store, out of the defendants' own discount stores. To be sure, the Beydas testified that they sold to such dealers because they needed cash, but the trial judge evidently did not believe them.

From this and other testimony, it is clear that there was ample evidence from which the Court could have found both Beydas guilty of receiving and having in possession these Channel Master radios, knowing them to have been stolen. Such guilty knowledge was proved, or could be inferred, not only from Hartsin's testimony, but also from other independent testimony, including explanations given by Bernard Beyda and other testimony given by the Beyda brothers, which the court evidently found to be false.

The fourth alleged error is that "The District Court abused its discretion in denying the defendants' motion for a new trial, supported by offers of proof re-

futing the testimony of the government witness upon which the finding of guilty necessarily was based."

The motion, quoted ante, note 1, does not include, as a ground thereof, newly discovered evidence. On the other hand, the affidavits filed after the expiration of the 5-day period for the usual motion for a new trial appear to be based upon the theory that the motion includes newly discovered evidence as one of its grounds. Be that as it may, we do not base our decision upon any fine distinction [5] between the two types of motions, but assume, for the purpose of this decision, that the motion, however ineptly phrased, and regardless of the dates of filing of the affidavits, properly raises the question of whether a new trial should have been granted, either on the ground of newly discovered evidence or "in the interest of justice." (Rule 33, F.R.Cr.P.), or both.

We find no error in the trial Court's rulings as to the admission or exclusion of evidence, including the rulings disposed of ante in our discussion of the first claimed error. Inasmuch as both parties expressly admit that the lower Court considered, ruled upon, and denied the motion for a new trial, we must assume that it fully considered and found insufficient the motion and every ground raised thereby, including the alleged newly discovered evidence.

Here again, for the purpose of this opinion, we disregard the technical objection raised by the government as to the failure of the affidavits to expressly state when the facts alleged in the Harmon affidavit were discovered by the defendant, and assume that they were discovered after the date of the Court's finding of guilt, on September 6, 1962. Nevertheless, the alleged facts stated in this and in other affidavits are insufficient, in our judgment, to establish an abuse of discretion on the part of the trial judge in denying the motion. In

---

5. Such as are noted in cases like United States v. Johnson (1946), 327 U.S. 106, 109, 66 S.Ct. 464, 90 L.Ed. 562; Brodie v. United States, 111 U.S.App.D.C. 170, 295 F.2d 157 (1961) and Pitts v. United States, 263 F.2d 808, 9 Cir. (1959), cited in the government's brief.

this connection we also assume for the purpose of this decision that the affidavits are sufficient under California law, although not sworn to before an officer authorized to administer oaths. [C.C.P. § 2015.5]

In order to warrant a new trial on the ground of newly discovered evidence, the following criteria have been laid down:[6]   (1) it must appear from the motion that the evidence relied on is, in fact, newly discovered, i. e., discovered after the trial. Although this is not clear at least as to the facts alleged in the Harmon affidavit, we assume for the purpose of this decision, as above stated, that this requirement has been fulfilled;  (2) the motion must allege facts from which the Court may infer diligence on the part of the movant. Again, we assume, for the purpose of this decision, that this requirement has been met;  (3) the evidence relied on must not be merely cumulative or impeaching; but (4) must be material to the issues involved;  and (5) must be such that on a new trial, would probably produce an acquittal.

The affidavits in support of the motion fail to meet the requirements of items (3) and (5) thus stated. Besides the dubious weight which might have been given to an affidavit of a convicted auto thief (although we are aware that the offense, under California law, would be considered a misdemeanor if Harmon had been sentenced to the county jail), all we have from the Harmon affidavit is an allegation that in the course of some conversation between Hartsin and the affiant, which is not detailed in full, Hartsin allegedly said, "I don't know" in answer to affiant's question, "Do you know that the defendants knew that the transistors were stolen;" "That after some further conversation, the prisoner Hartsin stated to your affiant that 'I'm looking out for myself,' and 'there's a possibility of me getting my time out;' " and "That thereafter there was further conversation with reference to the possibility of prisoner Hartsin's sentence being reduced."

These statements do not, in and of themselves, cast doubt upon the guilt of the defendants or either of them, in the light of the entire evidence in the case, which, by statements attributed to defendants themselves as testified to by F. B.I. agents Rauch and Breslin, established the presence of both defendants Beyda at the Hartsin negotiations concerning the Channel Master radios. Any number of reasons can be suggested as to why Hartsin, mindful of the unpopularity among prisoners of "ratting" on others, and cautious of disclosing too much of what he might say to a stranger, would say, "I don't know," to a question such as posed to Hartsin. Moreover, it can undoubtedly be judicially noted that, even when not offered any express inducement to testify, most prisoners who testify against others hope to better themselves by testifying, and such hope does not necessarily indicate a desire or intent to state what is untrue. The alleged expressions of Hartsin, indicating that he was looking out for himself, and as to the possibility of his getting his sentence reduced following other vague and undefined "further conversation," are so vague as to be entitled to little weight. On the whole, therefore, these alleged facts are merely cumulative and go to mere impeachment, and do not, of themselves, indicate that on a new trial they would probably produce an acquittal.

Likewise, the affidavits of Franco and Bernard Beyda, aimed at indicating that Robert was not present when Hartsin negotiated with Bernard for the Channel Masters, are cumulative, aimed at impeachment of Hartsin, and fall short of a probable effect in producing an acquittal upon a new trial. In the light of the trial judge's evident rejection of the veracity of the Beyda brothers, and his acceptance of the testimony of the two F. B.I. agents, Hartsin, and other government witnesses, including the testimony

---

6. Pitts v. United States, 9th Cir., 263 F.2d 808 (1959).

as to admissions made by both defendants themselves to the F.B.I. agents, we can not say that the trial judge erred or abused his discretion in refusing to grant a new trial, either on the ground of newly discovered evidence, or on that of necessity in the interest of justice.

The judgment is therefore affirmed.