William R. O'ROURKE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19614.

United States Court of Appeals
Ninth Circuit.

June 21, 1965.

Rehearing Denied July 28, 1965.

Dale M. Green, Sherwood, Tugman & Green, Walla Walla, Wash., John Gavin, Gavin, Robinson, Kendrick, Redman & Mays, Yakima, Wash., for appellant.

Frank R. Freeman, U. S. Atty., C. D. Fransen, Asst. U. S. Atty., Yakima, Wash., for appellee.

Before HAMLEY and JERTBERG, Circuit Judges, and MATHES, District Judge.

HAMLEY, Circuit Judge:

William R. O'Rourke, Jr., appeals from a judgment, entered upon a jury verdict, convicting him of evasion of individual income taxes for the year 1958, in violation of 26 U.S.C. § 7201 (1958). He urges three reasons why the judgment should be reversed: (1) the evidence is insufficient to establish any willful intention on his part to evade the payment of individual income taxes in 1958; (2) the verdict was coerced or compromised; and (3) the verdict of guilty is inconsistent with the verdicts of not guilty returned on the five other counts of the indictment.

In three counts of the indictment O'Rourke and his wife were jointly charged with evasion of individual income taxes for the years 1956, 1957 and 1958. In three additional counts covering the same years they were jointly charged, as president and vice-president, respectively, of their wholly-owned corporation, W. R. O'Rourke Company, Inc., with evasion of corporate income taxes. The jury acquitted Mrs. O'Rourke on all six counts and acquitted appellant on five counts, finding O'Rourke guilty of count III relating to the joint personal income tax reported for the year 1958 by appellant and his wife.

Appellant was the sole owner of W. R. O'Rourke Company and incorporated the business in April, 1956. The unincorporated business was gradually liquidated and was entirely closed out by the end of 1957. The evidence leading to the conviction showed that some of the accounts owned by the corporation were paid but never recorded in the corporate books. Substantially all of the payments not so recorded were placed in the personal bank account of O'Rourke.

O'Rourke drew checks on this personal bank account for the purchase of corporate securities which were taken in his name, for the repayment of personal loans, for the payment of personal living expenses, and for the purchase of real estate. During 1958, O'Rourke used funds in this personal account to purchase corporate securities having a total price of $45,462.24. This figure is to be compared to the $71,909.00 received by him in that year from payments which should have gone to the corporation, according to testimony presented by the Government. O'Rourke used these corporate securities as well as other personal assets and assets of the corporation as security for bid bonds needed for corporation business.

The head bookkeeper for O'Rourke from 1955 until about January 15, 1959, was Mrs. Olive Leidy. She prepared the trial balance for the calendar year 1958 and gave it to William H. Holland, O'Rourke's certified public accountant. Holland used the trial balance in the preparation of the corporate income tax returns for the O'Rourkes. The trial balance did not reflect the money which was collected on corporation accounts but which was placed in the personal account of O'Rourke.

Based on information supplied to them by Mrs. Leidy, the Internal Revenue Service began an audit and investigation of O'Rourke's books and records. Thereafter he requested Holland to audit his personal and corporate records. As a result of that audit O'Rourke filed amended returns in 1960 and attempted to transfer the stock to the corporation.

We first consider the question of whether, as O'Rourke asserts, the evidence is insufficient to support the verdict.

For a violation of section 7201 under count III of the indictment, appellant must have had a greater personal income tax due and owing for the year 1958 than he reported, and he must have willfully attempted to evade such tax. Elwert v. United States, 9 Cir., 231 F.2d 928, 932–933. In determining whether the jury was warranted in finding these two elements to exist, we must view .the evidence in a light most favorable to the Government, including all the reasonable inferences to be drawn therefrom. Noto v. United States, 367 U.S. 290, 296, 81 S.Ct. 1517, 6 L.Ed.2d 836; Beyda v. United States, 9 Cir., 324 F.2d 526, 527; Carr v. United States, 9 Cir., 317 F.2d 409, 411.

The theory on which the Government prosecuted the case and on which the court instructed the jury, over appellant's objection, was that O'Rourke personally received money which properly should have been credited to the corporation. Under that theory O'Rourke should have reported the income in the corporate return and then also in his personal income tax return as a dividend. The diversion to himself of income which should have first been recorded in the books of the corporation, the Government contended, resulted in a constructive dividend to him.

O'Rourke's position, on the other hand, is that the money which the Government says was a constructive dividend was used by him as trustee for the corporation and for corporation purposes, and was therefore not a constructive dividend. In addition, O'Rourke points out that he testified that he did not know what a constructive dividend is, and that there was other testimony indicating that experts disagree as to what constitutes a constructive dividend and whether there was one in this case. Under these circumstances, O'Rourke argues, he could not be guilty of the offense since he did not have the necessary criminal intent.

First, was the jury warranted in finding that more income should have been reported in O'Rourke's individual income tax return for 1958 than was reported? The answer to that question lies in the determination of whether, on this record, the corporate money which was placed in appellant's personal account could be found to be a constructive dividend.

O'Rourke's analysis is that: (1) the money placed in the personal account was used by O'Rourke to buy securities which in turn were pledged by him to obtain loans and bid bonds for the corporate business and which constituted a corporate use; (2) he intended the money to be so used, and the only reasons why he placed the securities in his own name rather than the corporate name was to avoid the inconvenience of obtaining a corporate resolution every time a share of stock was sold and to meet the failure of brokers to take a corporate check; (3) he did subsequently transfer the securities to the corporate name; (4) the transaction constituted appellant as trustee of the securities for the corporation.

There is no question but that O'Rourke, in 1958, used funds from his personal account, to the extent of $45,462.24, to purchase corporate securities, and that these securities were pledged in aid of the corporate business. But this sum was substantially less than the $71,909.00 which he received in that year in funds which should have been recorded on the corporate books, and which he deposited in his personal account. Moreover, the theory that his pledge of these securities in aid of the corporation demonstrates that he intended to hold the securities as trustee for the corporation is undermined by the fact that in many instances the pledge of the securities was just part of O'Rourke's pledge of all of his personal assets together with corporate assets.

The jury also could have credited additional evidence which indicated that O'Rourke did not intend to act as trustee of the securities. O'Rourke treated the securities as personal assets, as seen by the fact that the dividends were reported in 1958 as personal income. Mr. Holland testified that O'Rourke listed the securities as his personal assets in his financial

statement. O'Rourke's action in transferring the securities to the corporation after he knew the criminal investigation had begun could have been regarded by the jury as self-serving.

Concerning the contention that one reason why he placed the securities in his own name rather than that of the corporation was to avoid the necessity of corporate resolutions, the only testimony called to our attention is O'Rourke's statement that he sought to facilitate the trading of the stock. The jury could well conclude that this was not the real reason why the stocks purchased with corporate money were placed in O'Rourke's name, especially since he kept the dividends paid on this stock.

The assertion that stock was placed in O'Rourke's name because the brokers would not take a corporate check has no support in the evidence. Mrs. O'Rourke testified that they had to put stock purchases through their own personal account " * * * because when we wrote a company check for it, they returned it to us and said it had to be made through the personal name of Mr. O'Rourke, since the stocks were in his name." She was referring to the situation as it existed before the corporation was organized. In 1958 the corporation was in existence and the company was not. There is no reason to believe that if the stocks were to be in the name of the corporation, the brokers would have required O'Rourke's personal check. And even if they did, this would not have prevented O'Rourke from having them purchased in the name of the corporation.

The jury, being warranted in finding that the money used was corporate income and that it was used to buy securities in O'Rourke's name and intended by him to be his personal assets, was entitled to regard the transaction as a constructive dividend. The subsequent failure of O'Rourke to report this income made him liable for more income than he reported in 1958.

Appellant points out that the experts who testified disagreed on whether this transaction constituted a constructive dividend. He also argues that he had never heard of a constructive dividend and therefore he could not be found guilty because he could not have had the requisite intent to evade taxes.

The question of whether or not the transaction constituted a constructive dividend is one of fact; specifically, whether he took corporate money and held it as his own personal asset. The circumstance that experts disagreed as to whether he did so, and therefore received a constructive dividend, did not preclude the jury from evaluating this and other evidence and making its own determination as to that fact.

O'Rourke urges that if experts disagree on whether a constructive dividend existed, and even though the jury should ultimately conclude that a constructive dividend did exist, there would be good reason to conclude that appellant was confused as to the nature of the transaction. That confusion, O'Rourke insists, would in turn negate any willful intent to evade taxes on his part, especially in view of the fact that he testified he did not know what a constructive dividend is.

But appellant's experts were proceeding on assumed facts which the jury could have found did not exist. For example, Holland testified that he did not think that a constructive dividend existed because of the " * * * fact that * * * " the funds were used to buy securities used in the corporate business and those securities were later placed in the corporate name. D. W. Frame, another expert witness for O'Rourke, testified to the same effect. The experts thus assumed that O'Rourke was acting as trustee for the corporation in regard to the securities.

As has been indicated, whether he intended to act as trustee or was a trustee in fact was a question of fact. It is that question around which all the confusion about the constructive dividend exists. The jury was entitled to believe that appellant did not intend to hold the securities as trustee. With that fact established, the confusion among the experts

would have disappeared. Moreover, as noted above, a substantial part of corporate funds credited to O'Rourke's personal account in 1958, were not used to purchase corporate securities in that year.

◼ Equally unavailing is the testimony by O'Rourke that he did not know what a constructive dividend is. The important questions are whether: (1) he took corporate money for his personal purposes knowing that the income must be reported by the corporation as its income and by him as money distributed to him by the corporation, (2) he did not so report that money, and (3) he had an intent to willfully evade income taxes.

O'Rourke's testimony indicates that he knew of the necessity of reporting income for income tax purposes. He also knew that corporate income was going into his personal bank account. That income was not reported in his personal income tax return.

◼ We conclude that the jury was entitled to find that O'Rourke was engaged in an attempt to mislead and conceal income received in 1958 and thereby to willfully and intentionally evade the payment of his individual income taxes for that year, as charged in count III of the indictment.

Appellant argues that the jury verdict was compromised and coerced. This contention is based primarily upon the length of time between submission of the case to the jury and the rendition of its verdict (from 10:40 a. m. January 31, 1964 to 9:30 p. m. February 1, 1964, the jury having been permitted to disperse from about 10:30 p. m. January 31 to the opening of court the next morning); the fact that the foreman several times reported that no progress was being made in reaching a verdict; and that the judge did not make any response to the foreman's last message of this kind, soliciting further instructions, delivered at 2:40 p. m. on February 1.

After the verdicts were read and the jury was polled, counsel for O'Rourke for the first time objected to the filing of the verdict on count III on the ground that it appeared to have been coerced, a compromise verdict.

◼ Since all of the facts upon which the objection is based were known before the jury returned its verdict the objection, voiced only after it was known that the verdict was adverse, came too late. In any event the trial judge did not abuse his discretion with regard to the length of time the jury was kept together. See Mills v. Tinsley, 10 Cir., 314 F.2d 311, 313.

Finally, appellant argues, the judgment should be set aside because the verdict on count III is inconsistent with the verdicts on the other counts.

◼ Consistency in a jury's verdict on each of several counts is not necessary. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356; Hill v. United States, 9 Cir., 306 F.2d 245, 247; Koolish v. United States, 8 Cir., 340 F.2d 513, 525–526.

Affirmed.