**UNITED STATES of America,
Appellee,**

v.

**Charles W. POPE, Appellant.**

**No. 19408.**

United States Court of Appeals
Eighth Circuit.

Aug. 27, 1969.

Robert F. Wilson, Cedar Rapids, Iowa, for appellant, Fred C. Fisher, Jr., Cedar Rapids, Iowa, on the brief.

Asher E. Schroeder, U. S. Atty., Sioux City, Iowa, for appellee, and filed brief.

Before MATTHES, GIBSON and BRIGHT, Circuit Judges.

MATTHES, Circuit Judge.

The defendant was indicted in six counts for using the mails to defraud three insurance companies in violation of 18 U.S.C. § 1341. Each of the counts was premised upon use of the mails on six different dates in 1963 and 1964 in furtherance of the fraudulent plan. The jury acquitted the defendant on Counts I, II, III and V and convicted him on Counts IV and VI. These two counts involved use of the mails on February 11, 1964, and April 8, 1964, respectively. The district court entered judgment on the jury verdicts and imposed a fine of $750 for each offense, for a total of $1,500. This timely appeal followed.

## SUFFICIENCY OF THE EVIDENCE

Defendant explicitly challenges the sufficiency of the Government's evidence to make a jury issue and urges that the court erred in not granting his motion for judgment of acquittal offered at the close of the Government's case. Implicit in defendant's brief is the further claim that the court should have entered a judgment of acquittal at the close of the whole case. We disagree and hold that the evidence, viewed in the light most favorable to the verdict, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Teel v. United States, 407 F.2d 604 (8th Cir. 1969); Latham v. United States, 407 F.2d 1 (8th Cir. 1969), supports the convictions.

The record shows and the Government concedes that the defendant sustained disabling injuries as a result of an automobile accident which occurred on January 7, 1963. At that time defendant was insured under two health and accident policies issued by Monarch Life Insurance Company, Springfield, Mass. These policies provided for payment of a total of $450 monthly indemnity for a maximum period of 24 months in one policy and five years in the other.[1]

---

1. In addition to the Monarch policies defendant had, prior to the accident, purchased two policies providing for benefits for total disability from Ohio State Life Insurance Company.

The defendant periodically filed claims and it appears that Monarch paid defendant benefits approximating $8,900 from January 22, 1963 to on or about April 8, 1964.[2]

Defendant's troubles emanated from two claims for benefits under the Monarch policies. These claims were submitted on forms furnished by Monarch. On one side the insured was required to and did answer questions relating to his physical condition. He admitted signing this part of the claim. The other side of the form contained the "attending physician's statement." One of the two claims in question, the subject of Count IV, was purportedly signed on February 6, 1964, by Dr. T. H. Blake as the attending physician. Dr. Blake, an orthopedic surgeon, was one of eight doctors in Jackson Bone and Joint Clinic, Jackson, Miss. The letter "T" appeared below the doctor's purported signature. Miss Elsie Thorne was the office manager of the clinic and was authorized to sign Dr. Blake's name to patient's claims for insurance benefits. The physician's statement showed on its face that the patient (defendant) "will * * be continuously totally disabled (unable to work) [f]rom 8/63, * * * through unable to state." Attached to the claim was a supporting letter dated February 5, 1964, also purportedly written and signed by Dr. Blake (the letter "T" appeared below the doctor's signature) in which the doctor reviewed in some detail his diagnosis and treatment of defendant's injuries. This claim was mailed from Jackson, Miss. to Monarch in Springfield, Mass. The claim was approved on or about February 11, 1964. On that day Monarch issued and mailed to defendant at Cedar Rapids, Iowa, where he resided, two checks, one for $400 and the other for $500, covering the amount of benefits due under the disability policies for a period of two months.

The other claim form, the subject of Count VI, was signed by defendant on March 3, 1964, and purportedly signed by Dr. Blake as the attending physician on March 5, 1964. The letter "T" also appeared under Dr. Blake's signature on this claim. In the physician's portion of the form it was stated in substance that defendant had been continuously, totally disabled from August 2, 1963, through "unable to state." A photocopy of a letter dated February 28, 1964, purportedly written by Dr. Blake also accompanied this claim. The claim and supporting data were mailed from Jackson, Miss. on or about March 7, to Monarch. Pursuant thereto the Company issued two checks on April 8, 1964, one for $520, the other for $500. They were payable to "Attorney Stanley M. Nielsen and Charles Pope" and were mailed to them on the same day at Cedar Rapids, Iowa.

Counts IV and VI were prosecuted on the theory that the defendant had devised a plan to defraud Monarch by presenting claims which had been fabricated and were not genuine; that the two demands discussed above were false and fictitious in that neither Dr. Blake nor anyone acting authoritatively for him had prepared the "physician's statements", had signed such statements or had written the supporting letters. Our review of the voluminous record convinces us that there was substantial evidence to support the Government's position.

Dr. Blake and Miss Thorne testified unequivocally that they had not completed or signed the physician's statement in support of either claim. The information supplied on the forms did not coincide with Dr. Blake's office records to which he referred during the course of his testimony. Dr. Blake also stated that the stationary used in the preparation of the supporting letters was obsolete and had not been used by the clinic for a number of years prior to

---

2. Defendant also collected substantial amounts from the Ohio State Life Insurance Company on two policies issued by it. Two of the claims against Ohio State were the subject of other counts of the indictment.

February, 1964. There was evidence, however, indicating that some of the obsolete letterheads were later discovered in the physiotherapy room of the clinic.

A number of other employees of the clinic, including Dr. Blake's wife, corroborated the testimony of Dr. Blake and Miss Thorne. In fact, Dr. Blake stated that, contrary to the information shown in the physician's statement, he had not seen or examined the defendant since November 3, 1963. Additionally, there was expert testimony to the effect that the physician's statements were not prepared by use of any typewriter that was in the clinic at the time the statements were purportedly prepared.

■ Defendant apparently rests his challenge to the evidence on the erroneous premise that it was necessary for the Government to prove by direct testimonial evidence that the defendant or someone acting for him had falsified the claim forms, the supporting letters and had forged Dr. Blake's signature thereto. We are not persuaded by this argument. It is true that the Government did not establish, by direct evidence, the identity of the person or persons who had prepared the "physician's statements," the letters, and had forged the doctor's signatories. However, there was an abundance of circumstantial evidence from which the jury could properly infer, as it manifestly did, that the defendant directly or indirectly participated in the preparation and execution of the fictitious "attending physician's statements," and the supporting data. It is, of course, fundamental that an offense may be proved by and rest upon circumstantial evidence. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Peterson v. United States, 411 F.2d 1074 (8th Cir. 1969); Doss v. United States, 355 F.2d 663, 667 (8th Cir. 1966); DeVore v. United States, 368 F.2d 396, 399 (9th Cir. 1966).

In our view, the guilt or innocence of defendant turned in large part on the issue of credibility. Defendant asserted that after he had completed the patient's part of the claim forms in question, one was mailed and the other delivered in person to the clinic in Jackson, Miss. for completion; that what occurred thereafter was unknown to him. He unequivocally disclaimed any knowledge of the identity of the person or persons who had completed that part of the formal claim designated for use by the attending physician. On the other hand, as shown above, the Government, by an abundance of evidence, established facts from which the jury obviously inferred that the physician's part of the claim forms, which was crucial to affirmative action by the insurance company had been falsified, and that the defendant directly or indirectly participated in the fraud.

There is no claim that the mails were not used to further the unlawful plan. We therefore conclude that the district court properly denied defendant's motions for judgment of acquittal.

## JENCKS ACT

Defendant also complains of the failure of the court to require the production of certain documents in the possession of the Government. Rule 16(b), Fed.R.Crim.P., provides for the discovery of investigative reports by Government agents and statements of prospective Government witnesses only as authorized by 18 U.S.C. § 3500, the Jencks Act. Under this Act, after a Government witness has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement of the witness in its possession "which relates to the subject matter as to which the witness has testified."

The material requested by defendant appears in exhibits 1, 2, 3 and 6 which the trial court scrutinized *in camera*. Upon examination of the exhibits and the two postal inspectors largely responsible for their preparation, Judge McManus ordered the production of portions thereof and found the remainder

did not fall within the purview of the Jencks Act.

In sustaining Judge McManus' rulings we are mindful of the admonition of the Supreme Court in Palermo v. United States, 360 U.S. 343, 353, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), reiterated in Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963):

> " 'Final decision as to production must rest, as it does so very often in procedural and evidentiary matters, within the good sense and experience of this district judge guided by the standards we have outlined, and subject to the appropriately limited review of appellate courts.' "  *Id.* at 493, 83 S.Ct. at 1360.

■ Defendant focuses his attack upon the refusal of the court to require production of the reports and resumes of postal inspectors Lynchwick and Davis, and a letter from the United States Attorney in Jackson, Miss. Lynchwick, a postal inspector who participated in the investigation, did not testify in the trial. Thus, his statements are not required to be produced under § 3500. The district court in discharging its responsibility was careful, however, to interrogate Lynchwick *in camera* and to examine his file for the purpose of determining whether any part of the summary or report he had prepared contained any relevant evidence which would aid the defendant.[3] Defendant's counsel was present during this *in camera* interrogation. The summaries, most of which were prepared by Davis, have also been reviewed by us. They were not (1) signed or otherwise adopted by any of the witnesses, nor were they (2) recorded contemporaneously with the making of an oral statement and hence were not in our judgment producible under the Jencks Act. Palermo

v. United States, *supra,* 360 U.S. at 352, 79 S.Ct. 1217; Hance v. United States, 299 F.2d 389 (8th Cir. 1962); United States v. Crosby, 294 F.2d 928, 951 (2d Cir. 1961), cert. denied. [Mettleman v. U. S., Pettit v. U. S., and Meredith v. U. S., 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523] rehearing denied, Mettleman v. U. S., 369 U.S. 881, 82 S.Ct. 1138, 8 L.Ed.2d 285 (1962).

■ Defendant speculates that a letter from the United States Attorney in Jackson, Miss. to postal inspector Davis was crucial to his defense. This letter followed an investigation by the United States Attorney of the file that had been submitted to him by Davis. Defendant seems to be laboring under the erroneous view that the United States Attorney informed Davis that a federal offense had not been committed by defendant, and that the venue of a criminal prosecution was either in the Jackson, Miss. District or in Springfield, Mass. Both of defendant's conjectures about the letter are misplaced. It consists of three terse sentences declining prosecution because the case "lacks jury appeal" and "could best be settled" by civil action. Aside from the questionable admissibility of the letter, it did not qualify as a document which the Government was required to produce since the United States Attorney who authored the letter was not called as a witness by the Government. Furthermore, and more importantly, the vital substance of the letter was before the jury. A memorandum of witness LeRoy, an official of Monarch, was introduced as a defense exhibit. This memorandum explicitly recited that Davis had presented the case to the United States Attorney in Jackson, Miss., and that the latter had declined to prosecute. Defense counsel fully ex-

---

3. In so doing, Judge McManus was following a procedure which received the sanction of the Supreme Court in Palermo v. United States, *supra,* where Mr. Justice Frankfurter stated:
"* * * [W]hen it is doubtful whether the production of a particular statement is compelled by the statute, we approve the practice of having the Government submit the statement to the trial judge for an *in camera* determination." *Id.* at 354, 79 S.Ct. at 1225.

ploited this matter in his closing argument to the jury. Thus, it is evident that the error, if any, in failing to produce the letter was clearly harmless and did not affect the substantial rights of the defendant. Rosenberg v. United States, 360 U.S. 367, 371, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959); Karp v. United States, 277 F.2d 843, 849 (8th Cir.), cert. denied, 364 U.S. 842, 81 S.Ct. 80, 5 L.Ed.2d 65 (1960).

We have engaged in a meticulous examination of all of the documents prepared by inspectors Lynchwick and Davis. We are impressed with the liberality exercised by Judge McManus in acceding to the defendant's requests. In our view the defendant was permitted to inspect every document or statement which met the statutory test. Beyond doubt, defendant's rights were safeguarded, and were not prejudiced by the court's rulings.

## INSTRUCTION ON CIRCUMSTANTIAL EVIDENCE

Defendant's complaint that the court erred in instructing on circumstantial evidence is lacking in substance. His proffered instruction, which the district court refused to give, did not conform to the teachings of the Supreme Court in Holland v. United States, *supra*, 348 at 139–140 and our cases of United States v. Kye, 411 F.2d 120, 140, 75 S.Ct. 127 (8th Cir. 1969); Gregory v. United States, 365 F.2d 203, 205 (8th Cir. 1966), cert. denied, 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676 (1967); Wood v. United States, 361 F.2d 802, 806 (8th Cir.), cert. denied, 385 U.S. 978, 87 S.Ct. 520, 17 L.Ed.2d 439 (1966), and it was properly refused. We have examined the charge and find no error in the instruction on circumstantial evidence and the standards of reasonable doubt.

## ALLEN CHARGE

The defendant asserts prejudice because the court gave the so-called Allen instruction. The jury received the case at 2:40 p. m. May 14, 1968, and de-liberated until 11:00 p. m. It reconvened at 9:00 a. m. the following day and continued its deliberation until 2:40 p. m. At that time the jury deliberated between 10 and 11 hours. Thereupon Judge McManus recalled the jury and without making any further inquiry gave the instruction complained of, which apparently was taken verbatim from the "Manual on Uniform Jury Instructions in Federal Criminal Cases," offered by the Seventh Circuit Judicial Conference Committee on Jury Instructions, 33 F.R.D. 523, 611 (1963). The Judge made no additional comments. The jury resumed its deliberations at 2:43 p. m. and returned at 6:30 p. m. with its verdict. The gist of defendant's contention is that the court erred in allowing the jury to deliberate for the period of time stated and in giving the supplemental instruction.

We disagree. The trial consumed more than 6 days and in our view the deliberation for approximately 11 hours was not so unreasonable in duration as to require the court to declare a mistrial. The time a jury may deliberate is within the sound discretion of the trial judge. Mills v. Tinsley, 314 F.2d 311, 313 (10th Cir.), cert. denied, 374 U.S. 847, 83 S.Ct. 1907, 10 L.Ed.2d 1067 (1963); United States v. Minieri, 303 F.2d 550, 556 (2d Cir.), cert. denied, 371 U.S. 847, 83 S.Ct. 79, 9 L.Ed.2d 81 (1962); Jenkins v. United States, 149 F.2d 118, 119 (5th Cir.), cert. denied, 326 U.S. 721, 66 S.Ct. 27, 90 L.Ed. 427 (1945). See also O'Rourke v. United States, 347 F.2d 124, 128 (9th Cir. 1965).

Defendant's objection to the court's supplemental instruction is thoroughly answered by our recent decision in Hodges v. United States, 408 F.2d 543 (8th Cir. 1969). There we upheld a stronger charge given after the jury had begun its deliberation. We considered it significant that the jury conferred an additional 5¾ hours after receiving the "Allen" charge. Likewise, in this case, the jury deliberated almost 4 hours after receiving the instruction

under attack. This factor coupled with the moderate tone of the instruction is indicative of the absence of a coercive effect. It is also significant that the jury acquitted defendant on 4 of the counts. All of this leads us to conclude that the jury exercised discerning judgment and was not improperly influenced by the supplemental instruction.

■ We add a caveat. As Judge Blackmun observed in *Hodges*, attacks upon charges of the "Allen" type have become increasingly frequent. We therefore caution the district courts in this Circuit to observe with care all of the established safeguards in giving the charge so that it does not detract from the responsibility of each member of the jury conscientiously to adhere to his own opinion in arriving at a just verdict. See Posey v. United States, 416 F.2d 545 (5th Cir., 1969).

## MOTION FOR NEW TRIAL

Defendant finally complains because the court failed to sustain his motion for new trial based on the ground of newly discovered evidence. We have ascertained from the original files and the contentions of the parties that the newly discovered evidence relied upon consisted of documents of Stanley M. Nielsen, Pope's attorney during 1964. These documents were discovered on May 29, 1968, in the apartment of Nielsen's former law clerk, Clark, who was deceased at the time the documents were discovered. Included in the papers were 4 letters purportedly written from Nielsen to Drs. Blake and Naef relating to the claims which were the subject of Counts IV and VI of the indictment. The original of the letter purportedly written by Dr. Blake dated February 28, 1964, referred to above, and a copy of the Ohio State Insurance Company claim form dated March 4, 1964, were also among the discovered papers.

■ In an affidavit executed on June 3, 1968, attorney Nielsen stated that he had examined the letters purportedly written by him and that they were "true copies of letters signed by him and given to Franklin Clark (law clerk) for mailing." However, on June 12, 1968, Nielsen executed a second affidavit in which he unequivocally stated that subsequent to his first affidavit he had made a comprehensive search of his office records to verify the correctness of his first affidavit. Based upon this search he discovered that he had not written the letters. He enunciated a number of reasons why he had reached that conclusion stating: "For the reasons enumerated above, plus the fact that I have no independent recollection of writing, signing and mailing these letters, I am convinced that the copies of the letters previously described and incorporated in the affidavit which I signed on June 3, 1968, are not letters that I prepared and signed." The record demonstrates that the defendant failed to satisfy the requirements for a new trial.

In considering this point it is appropriate to recognize:

" * * * [M]otions for new trial on the ground of newly discovered evidence are looked upon with disfavor and it is equally well settled that such motions are addressed to the judicial discretion of the trial court and its decision will not be reversed on appeal except for a clear abuse of that discretion." Connelly v. United States, 271 F.2d 333, 334 (8th Cir. 1959) (citations omitted).

■ It is also firmly established that there must ordinarily be present and concur five verities, (1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved, and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal. Anderson v. United States, 369 F.2d 11, 19 (8th Cir. 1966), cert. denied, 386 U.S. 976,

87 S.Ct. 1171, 18 L.Ed.2d 136 (1967); Edwards v. United States, 361 F.2d 732, 734 (8th Cir. 1966); Johnson v. United States, 32 F.2d 127, 130 (8th Cir. 1929).

Manifestly, the showing made in support of the motion for new trial does not satisfy the above standards. The court did not abuse its discretion in denying the motion.

Finding no error, we affirm.